IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff,**<br><br>v.<br><br>PEDRI DUVERNEY-PERALTA, *et al.*,<br><br>**Defendants.** | **CRIMINAL NO.** 12-536 (JAG) |

**OPINION & ORDER**

GARCIA-GREGORY, D.J.

Before the Court is a motion to dismiss the indictment filed by defendants Gerardo Rodriguez-Ciprian ("Rodriguez") and Ayendy de Jesus ("De Jesus") (Docket No. 162), and joined by Alfonso Jimenez ("Jimenez"), (Docket No. 164). For the reasons that follow, the motion is **DENIED**.

**FACTUAL BACKGROUND**

On July 11, 2012, Rodriguez, De Jesus and Jimenez (collectively "Defendants") were charged in a three-count Indictment for conspiring to possess and import (with the intent to distribute) controlled substances while on board a vessel subject the jurisdiction of the United States.[1] According to the Government's affidavit, as part of an operation involving a drug smuggling organization operating between Dominican Republic and Puerto Rico, agents from the Homeland Security Investigations coordinated a narcotics smuggling venture by sea. (See

---

[1] Defendants are charged with violations of 46 U.S.C. § 70506(b) and 21 U.S.C. § 846 and § 21.

Docket No. 1-1) On June 29, 2012, after the transfer of approximately 60 bricks of a substance that later tested positive for cocaine, a suspect vessel was intercepted at sea. Jimenez, De Jesus and Rodriguez were the three people found on board. The vessel was kept in international waters, pending notification from the Dominican Republic that they were waiving their primary right of jurisdiction over the vessel. However, while the Government waited, the vessel sank, along with a handheld GPS that was on board.

Defendants move for dismissal of the Indictment alleging that the sinking of the vessel and the failure of the Government to preserve a handheld GPS aboard the ship violated their due process rights; in the alternative, they request that the Government be precluded from using any evidence seized from the vessel. The Government timely filed an opposition to Defendants' motion. (Docket No. 167).

## DISCUSSION

Defendants allege that, because the vessel sank, along with a handheld GPS that was inside, the Government failed to preserve *possibly* exculpatory evidence and/or relevant impeachment evidence.[2] They argue that this constitutes a violation to their due process rights and curtails their rights to adequately defend themselves. (See Docket No. 162). We disagree.

Courts have held that "[a] defendant who asserts a due process claim based on the government's failure to preserve evidence 'must

---

[2] Specifically, Defendants allege that the GPS *might* demonstrate that the suspect vessel was in a different location than the at-sea narcotics transfer. (See Docket No. 162, p. 3).

show that the government, in failing to preserve the evidence, (1) acted in bad faith when it destroyed evidence, which (2) possessed an apparent exculpatory value and, which (3) is to some extent irreplaceable." United States v. Ossai, 485 F.3d 25, 28 (1st Cir. 2007)(quoting United States v. Femia, 9 F.3d 990, 993-94 (1st Cir.1993). Therefore, "in missing evidence cases, the presence or absence of good or bad faith by the government *will be dispositive*." Id. (our emphasis).

First, Defendants state they were precluded from gaining access to possible exculpatory evidence. Unfortunately, their claim is purely speculative. There is nothing "apparent" about the handheld GPS that Defendants claim *might* have shown a different trajectory for the suspect vessel. See Ossai, 485 F.3d at 28 (stating that the missing evidence must possess an apparent exculpatory value). Moreover, Defendants do not offer any evidence nor highlight any inconsistencies in the Government's version of the facts that might suggest that the Defendants in the vessel were not involved in the narcotics transfer at sea.[3] With nothing more, the Court is left unconvinced.

Finally, Defendants have also failed to proffer any facts which might suggest that the members of the United Stated Coast Guard acted in bad faith by not removing the GPS from the vessel before it sank.

---

[3] In fact, the Government claims to have a Don Q bottle that was marked and given to the Defendants during the narcotics transfer, and later retrieved in the suspect vessel once it was intercepted at sea. It also claims that the three people found on the vessel matched the description of those who handed off the narcotics. (Docket No. 1-1, p. 2). So on top of fact that Defendants have not proffered any facts which might hint that they were not involved in the transfer of narcotics, the evidence itself suggests the contrary.

On the other hand, the Government has explained that the vessel was in poor condition, and that, even though the Coast Guard attempted to restart the engine and keep the vessel float, it sank following a heavy storm. (See Docket No. 167, p. 7)  The Government also stated that the reason why the vessel and all its contents were untouched and preserved was because the officers were waiting for permission from the Dominican Republic to exercise jurisdiction, which took approximately 7 days. (Id. at 7.) During that time, the Government claims that their primary concern was to account for the bottle of Don Q that linked Defendants and their vessel to the vessel involved in the at-sea narcotics transfer. (Id. at 7.) That said, the Defendants give no reason to suspect the Government's explanation. With nothing more proffered by Defendants, we do not find that the Government acted in bad faith. We, thus, deny Defendants' motion in its entirety.

### CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's motion in its entirety. (Docket No. 162).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 17th day of May, 2013.

S/ Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY
United States District Judge